1  Laurence M. Rosen, Esq. (SBN 219683)
   **THE ROSEN LAW FIRM, P.A.**
2  355 South Grand Avenue, Suite 2450
3  Los Angeles, CA 90071
   Telephone: (213) 785-2610
4  Facsimile: (213) 226-4684
   Email: lrosen@rosenlegal.com
5
6  Counsel for Plaintiff

7                **UNITED STATES DISTRICT COURT**
                 **NORTHERN DISTRICT OF CALIFORNIA**
8

| | |
|---|---|
| 9  MATTHEW VEAL, Individually and on behalf of all others similarly situated, | **Case No:** |
| 10 | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| 11  Plaintiff, | |
| 12  v. | **JURY TRIAL DEMANDED** |
| 13  LENDINGCLUB CORPORATION, RENAUD LAPLANCHE, SCOTT SANBORN, CARRIE L. DOLAN, BRADLEY COLEMAN, and THOMAS W. CASEY, | |
| 14 | |
| 15 | |
| 16  Defendants. | |

17

18      Plaintiff Matthew Veal ("Plaintiff"), individually and on behalf of all other persons

19  similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants

20  (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's

21  own acts, and information and belief as to all other matters, based upon, inter alia, the investigation

22  conducted by and through Plaintiff's attorneys, which included, among other things, a review of

23  the defendants' public documents, conference calls and announcements made by defendants,

24  United States Securities and Exchange Commission ("SEC") filings, wire and press releases

25  published by and regarding LendingClub Corporation ("LendingClub" or the "Company"),

26  analysts' reports and advisories about the Company, and information readily obtainable on the

27  Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth

28  herein after a reasonable opportunity for discovery.

Class Action Complaint for Violation of the Federal Securities Laws

**NATURE OF THE ACTION**

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of LendingClub between February 28, 2015 and April 25, 2018, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

**JURISDICTION AND VENUE**

2.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Defendants conduct business and the Company is headquartered in this Judicial District.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6.     Plaintiff, as set forth in the accompanying Certification, purchased LendingClub securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.     Defendant LendingClub operates an online marketplace platform that connects borrowers and investors in the United States. The Company is incorporated in Delaware and its

Class Action Complaint for Violation of the Federal Securities Laws

1  principal executive offices are located at 71 Stevenson St., Suite 300, San Francisco, California

2  94105. LendingClub's securities are traded on the New York Stock Exchange ("NYSE") under the

3  ticker symbol "LC."

4       8.      Defendant Renaud Laplanche ("Laplanche") co-founded the Company in 2007. He

5  served as the Company's Chief Executive Officer ("CEO") and member of its Board of Directors

6  (the "Board") from October 2006 to May 6, 2016.

7       9.      Defendant Scott Sanborn ("Sanborn") was the Company's Acting CEO from May 6,

8  2016 until June 28, 2016. Defendant Sanborn has been the Company's CEO since June 28, 2016.

9       10.     Defendant Carrie L. Dolan ("Dolan") served as the Company's Chief Financial

10 Officer ("CFO") from August 16, 2010 to August 8, 2016.

11      11.     Defendant Bradley Coleman ("Coleman") served as the Company's Principal

12 Accounting Officer, and served as the Company's Interim-CFO from August 2016 to September

13 2016.

14      12.     Defendant Thomas W. Casey ("Casey") has been the Company's CFO since

15 September 19, 2016.

16      13.     Defendants Laplanche, Sanborn, Dolan, Coleman and Casey are sometimes referred

17 to herein as the "Individual Defendants."

18      14.     Each of the Individual Defendants:

19      (a)     directly participated in the management of the Company;

20      (b)     was directly involved in the day-to-day operations of the Company at the highest

21              levels;

22      (c)     was privy to confidential proprietary information concerning the Company and its

23              business and operations;

24      (d)     was directly or indirectly involved in drafting, producing, reviewing and/or

25              disseminating the false and misleading statements and information alleged herein;

26
27      (e)     was directly or indirectly involved in the oversight or implementation of the

28              Company's internal controls;

Class Action Complaint for Violation of the Federal Securities Laws

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

15.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

16.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

17.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

18.    On February 27, 2015, LendingClub filed its annual report on Form 10-K for the year ended December 31, 2014 ("2014 10-K") with the SEC which provided the Company's annual financial results and position. The 2014 10-K was signed by Defendants Laplanche and Dolan. The 2014 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Laplanche and Dolan attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

19.    The 2014 10-K stated the Company believed that all installment loans offered through its marketplace featured a fixed rate that was "clearly" disclosed to the borrower and which contained "no hidden fees," stating in relevant part:

> We believe that our marketplace provides the following benefits to borrowers:
>
> • Access to Affordable Credit. Our innovative marketplace model, online delivery and process automation enable us to offer borrowers interest rates that are generally lower on average than the rates charged by traditional banks, credit cards or installment loans.

Class Action Complaint for Violation of the Federal Securities Laws

- Superior Borrower Experience. We offer a fast and easy-to-use online application process and provide borrowers with access to live support and online tools throughout the process and over the life of the loan.

- ***Transparency and Fairness. All of the installment loans offered through our marketplace feature a fixed rate that is clearly disclosed to the borrower during the application process, with fixed monthly payments, no hidden fees and the ability to prepay the balance at any time without penalty. Our platform utilizes a computerized, rules-based engine for credit decisioning, which removes the human bias associated with reviewing applications.***

- Fast and Efficient Decisioning. We leverage online data and technology to quickly assess risk, determine a credit rating and assign appropriate interest rates quickly.

(Emphasis added.)

20.     The 2014 10-K stated that the Company had a detailed privacy policy which complied with the Gramm-Leach-Bliley Act, stating in relevant part:

> Privacy and Data Security Laws. The federal Gramm-Leach-Bliley Act (GLBA) includes limitations on financial institutions' disclosure of nonpublic personal information about a consumer to nonaffiliated third parties, in certain circumstances requires financial institutions to limit the use and further disclosure of nonpublic personal information by nonaffiliated third parties to whom they disclose such information and requires financial institutions to disclose certain privacy policies and practices with respect to information sharing with affiliated and nonaffiliated entities as well as to safeguard personal customer information. ***We have a detailed privacy policy, which complies with GLBA and is accessible from every page of our website.*** We maintain consumers' personal information securely, and we do not sell, rent or share such information with third parties for marketing purposes unless previously agreed to by the consumer. In addition, we take measures to safeguard the personal information of our borrowers and investors and protect against unauthorized access to this information.

(Emphasis added.)

21.     On February 22, 2016, LendingClub filed its annual report on Form 10-K for the year ended December 31, 2015 ("2015 10-K") with the SEC which provided the Company's annual financial results and position. The 2015 10-K was signed by Defendants Laplanche and Dolan. The 2015 10-K contained signed SOX certifications by Defendants Laplanche and Dolan

Class Action Complaint for Violation of the Federal Securities Laws

attesting to the accuracy of financial reporting, the disclosure of any material changes to the

Company's internal control over financial reporting and the disclosure of all fraud.

22.    The 2015 10-K stated the Company believed that all installment loans offered

through its marketplace featured a fixed rate that was "clearly" disclosed to the borrower and

which contained "no hidden fees," stating in relevant part:

> We believe that our marketplace provides the following benefits to borrowers:
>
> • Access to Affordable Credit. Our innovative marketplace model, online delivery and process automation enable us to offer borrowers interest rates that are generally lower on average than the rates charged by traditional banks, credit cards or installment loans.
>
> • Superior Borrower Experience. We offer a fast and easy-to-use online application process and provide borrowers with access to live support and online tools throughout the process and over the life of the loan.
>
> • ***Transparency and Fairness. The installment loans offered through our marketplace feature a fixed rate that is clearly disclosed to the borrower during the application process, with fixed monthly payments, no hidden fees and the ability to prepay the balance at any time without penalty. Small business lines of credit have rates based upon the prime rate and allow borrowers to draw in increments, reducing their interest cost. Our platform utilizes an automated, rules-based engine for credit decisioning, which removes the human bias associated with reviewing applications.***

 (Emphasis added.)

23.    The 2015 10-K stated that the Company had a detailed privacy policy which

complied with the Gramm-Leach-Bliley Act, stating in relevant part:

> Privacy and Data Security Laws. The federal Gramm-Leach-Bliley Act (GLBA) includes limitations on financial institutions' disclosure of nonpublic personal information about a consumer to nonaffiliated third parties, in certain circumstances requires financial institutions to limit the use and further disclosure of nonpublic personal information by nonaffiliated third parties to whom they disclose such information and requires financial institutions to disclose certain privacy policies and practices with respect to information sharing with affiliated and nonaffiliated entities as well as to safeguard personal customer information. ***We have a detailed privacy policy, which complies with GLBA and is accessible from every page of our website.*** We maintain

Class Action Complaint for Violation of the Federal Securities Laws

consumers' personal information securely, and we do not sell, rent or share such information with third parties for marketing purposes unless previously agreed to by the consumer. In addition, we take measures to safeguard the personal information of our borrowers and investors and protect against unauthorized access to this information.

(Emphasis added.)

24.     On February 28, 2017, LendingClub filed its annual report on Form 10-K for the year ended December 31, 2016 ("2016 10-K") with the SEC which provided the Company's annual financial results and position. The 2016 10-K was signed by Defendants Sanborn and Casey. The 2016 10-K contained signed SOX certifications by Defendants Sanborn and Casey attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

25.     The 2016 10-K stated the Company believed that all installment loans offered through its marketplace featured a fixed rate that was "clearly" disclosed to the borrower and which contained "no hidden fees," stating in relevant part:

We believe that our marketplace provides the following benefits to borrowers:

- Access to Affordable Credit. Our innovative marketplace model, online delivery and process automation enable us to offer borrowers interest rates that are generally lower on average than the rates charged by traditional banks, credit cards or installment loans.

- Superior Borrower Experience. We offer a fast and easy-to-use online application process and provide borrowers with access to live support and online tools throughout the process and over the life of the loan.

- ***Transparency and Fairness. The installment loans offered through our marketplace feature a fixed rate that is clearly disclosed to the borrower during the application process, with fixed monthly payments, no hidden fees and the ability to prepay the balance at any time without penalty. Small business lines of credit have rates based upon the prime rate and allow borrowers to draw in increments, reducing their interest cost. Our platform utilizes an automated, rules-based engine for credit decisioning, which removes the human bias associated with reviewing applications.***

Class Action Complaint for Violation of the Federal Securities Laws

1

2

   • Fast and Efficient Decisioning. We leverage online data and technology to quickly assess risk, detect fraud, determine a credit rating and assign appropriate interest rates quickly.

3

   (Emphasis added.)

4       26.     The 2016 10-K stated that the Company had a detailed privacy policy which

5    complied with the Gramm-Leach-Bliley Act, stating in relevant part:

6

7

8

9

10

11

12

13

14

15

        Privacy and Data Security Laws. The federal Gramm-Leach-Bliley Act (GLBA) includes limitations on financial institutions' disclosure of nonpublic personal information about a consumer to nonaffiliated third parties, in certain circumstances requires financial institutions to limit the use and further disclosure of nonpublic personal information by nonaffiliated third parties to whom they disclose such information, and requires financial institutions to disclose certain privacy policies and practices with respect to information sharing with affiliated and nonaffiliated entities as well as to safeguard personal customer information. ***We have a detailed privacy policy, which complies with GLBA and is accessible from every page of our website.*** We maintain consumers' personal information securely, and only share such information with third parties for marketing purposes in accordance with our privacy policy and with the consent of the consumer. In addition, we take measures to safeguard the personal information of our borrowers and investors and protect against unauthorized access to this information.

16

   (Emphasis added.)

17

18

19

20

21

22

23

        27.     On February 22, 2018, LendingClub filed its annual report on Form 10-K for the year ended December 31, 2017 ("2017 10-K") with the SEC which provided the Company's annual financial results and position. The 2017 10-K was signed by Defendants Sanborn and Casey. The 2017 10-K contained signed SOX certifications by Defendants Sanborn and Casey attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

24

25

        28.     The 2017 10-K stated that the Company had a detailed privacy policy which complied with the Gramm-Leach-Bliley Act, stating in relevant part:

26

27

28

        Privacy and Data Security Laws. The federal Gramm-Leach-Bliley Act (GLBA) includes limitations on financial institutions' disclosure of nonpublic personal information about a consumer to nonaffiliated third parties, in certain circumstances requires financial institutions to limit the use and further disclosure of nonpublic personal information by

- 8 -

Class Action Complaint for Violation of the Federal Securities Laws

nonaffiliated third parties to whom they disclose such information, and requires financial institutions to disclose certain privacy policies and practices with respect to information sharing with affiliated and nonaffiliated entities as well as to safeguard personal customer information. ***We have a detailed privacy policy, which complies with GLBA and is accessible from every page of our website.*** We maintain consumers' personal information securely, and only share such information with third parties for marketing purposes in accordance with our privacy policy and with the consent of the consumer. In addition, we take measures to safeguard the personal information of our borrowers and investors and protect against unauthorized access to this information.

(Emphasis added.)

29.     The statements referenced in ¶¶18-28 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) LendingClub falsely promised consumers they would receive a loan with "no hidden fees"; (2) LendingClub's privacy policy did not comply with the Gramm-Leach-Bliley Act; (3) consequently, the foregoing conduct would subject LendingClub's business practices to heightened regulatory scrutiny by the Federal Trade Commission ("FTC"); and (4) as a result, Defendants' public statements were materially false and misleading at all relevant times.

### The Truth Emerges

30.     On April 25, 2018, the FTC announced in a press release that it had filed a complaint against LendingClub (the "FTC Complaint") alleging violations of, *inter alia*, the FTC Act for falsely promising consumers they would receive a loan with "no hidden fees[,]" and the Gramm-Leach-Bliley Act for failing to provide customers with a clear and conspicuous privacy notice so that each customer could reasonably be expected to receive actual notice. The press release states, in relevant part:

> **FTC Charges Lending Club with Deceiving Consumers**
> **Defendant promises "no hidden fees" but charges them anyway**
>
> April 25, 2018

Class Action Complaint for Violation of the Federal Securities Laws

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> *The Federal Trade Commission has charged the LendingClub Corporation with falsely promising consumers they would receive a loan with "no hidden fees," when, in actuality, the company deducted hundreds or even thousands of dollars in hidden up-front fees from the loans.*
>
> "This case demonstrates the importance to consumers of having truthful information from lenders, including online marketplace lenders," said Reilly Dolan, acting director of the FTC's Bureau of Consumer Protection. "Stopping this kind of conduct will help consumers make informed choices about loan offers."
>
> *As stated in the FTC's complaint, Lending Club recognized that its hidden fee was a significant problem for consumers, and an internal review noted that its claims about the fee and the amount consumers would receive "could be perceived as deceptive as it is likely to mislead the consumer." An attorney for one of the company's largest investors also warned the company that the "relative obscurity" of the up-front fee in light of the company's prominent "no hidden fees" representation could make the company a target for a law enforcement action.*
>
> *According to the FTC, Lending Club ignored these and other warnings and, over time, made its deceptive "no hidden fees" claim even more prominent.*
>
> The FTC also alleges that Lending Club falsely told loan applicants that "Investors Have Backed Your Loan" while knowing that many of them would never get a loan, a practice that delayed applicants from seeking loans elsewhere. In addition, in numerous instances, Lending Club has withdrawn double payments from consumers' accounts and has continued to charge those who cancelled automatic payments or paid off their loans, which costs consumers overdraft fees and prevents them from making other payments. *In addition, Lending Club failed to get consumers' acknowledgment of its information-sharing policy as required by law.*
>
> *The company is charged with violating the FTC Act and the Gramm-Leach-Bliley Act.*
>
> (Emphasis added).

31.    The FTC Complaint alleges the Company was acting in violation of the Gramm-Leach-Bliley Act due to, *inter alia*, its failure to deliver the initial privacy notice so that each customer could reasonably be expected to receive actual notice, stating in relevant part:

Class Action Complaint for Violation of the Federal Securities Laws

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

47. The Privacy Rule, which implements Sections 501-503 of the [Gramm-Leach-Bliley] Act, 15 U.S.C. §§ 6801-6803, was promulgated by the Federal Trade Commission on May 24, 2000, and became effective on July 1, 2001. 16 C.F.R. Part 313. Since the enactment of the Dodd-Frank Act on July 21, 2010, the Consumer Financial Protection Bureau ("CFPB") became responsible for implementing the Privacy Rule, and promulgated the Privacy of Consumer Financial Information, Regulation P, 12 C.F.R. Part 1016 ("Reg. P"), which became effective on October 28, 2014. Defendant's conduct is governed by the Privacy Rule prior to October 28, 2014, and by Reg. P after that date. The GLB Act authorizes both the CFPB and the Federal Trade Commission to enforce Reg. P. 15 U.S.C. § 6805.

48. Both the Privacy Rule and Reg. P require financial institutions to provide consumers with an initial and annual privacy notice. Both the initial and annual privacy notices must be "clear and conspicuous," 16 C.F.R. § 313.3(b) and 12 C.F.R. § 1016.3(b), and must "accurately reflect[] [the financial institution's] privacy policies and practices." 16 C.F.R. §§ 313.4 and 313.5 and 12 C.F.R. §§ 1016.4 and 1016.5. The privacy notice must include specified elements, including the categories of nonpublic personal information the financial institution collects and discloses, the categories of third parties to whom the financial institution discloses the information, and the security and confidentiality policies of the financial institution. 16 C.F.R. § 313.6; 12 C.F.R. § 1016.6. A financial institution must provide its privacy notice so that each consumer can reasonably be expected to receive actual notice. 16 C.F.R. § 313.9; 12 C.F.R. § 1016.9. For consumers who conduct transactions electronically, a consumer can "reasonably be expected to receive actual notice" if he or she acknowledges receipt of the notice as a necessary step to obtaining the financial product or service. 16 C.F.R. § 313.9; 12 C.F.R. § 1016.9; Privacy of Consumer Financial Information, 65 Fed. Reg. 33646-01, at 33665-66 (May 24, 2000).

49. Defendant failed to comply with the requirements of the Privacy Rule and Reg. P. Specifically, Defendant failed to deliver the initial privacy notice so that each customer can reasonably be expected to receive actual notice. 16 C.F.R. § 313.9; 12 C.F.R. § 1016.9. For example, until at least the end of 2016, Defendant did not require customers to acknowledge receipt of the notice as a necessary step to obtaining a particular financial product or service. 16 C.F.R. § 313.9, and Reg. P, 12 C.F.R. § 1016.9. Instead, Defendant required customers to agree only to Defendant's Terms of Use, which itself included only a link to Defendant's privacy policy. In order to reach the privacy notice that Defendant was required to provide to customers, a customer would need to click on a link that did not indicate it was related to privacy, and then further find a link to Defendant's privacy policy within the lengthy document to which the link led. Customers were

Class Action Complaint for Violation of the Federal Securities Laws

not provided a clear and conspicuous privacy notice before they submitted nonpublic personal information to Defendant.

* * *

### Count IV
### VIOLATIONS OF THE GRAMM-LEACH-BLILEY ACT ("GLB Act")
### PRIVACY RULE AND REG. P

63. As described in Paragraph 48, the Privacy Rule and Reg. P require financial institutions to provide customers with a clear and conspicuous privacy notice that accurately reflects the financial institution's privacy policies and practices. Further, financial institutions must deliver the privacy notice so that each customer could reasonably be expected to receive actual notice.

64. Defendant is a financial institution, as defined in Section 509(3)(A) of the GLB Act, 15 U.S.C. § 6809(3)(A).

65. As set forth in Paragraph 49, Defendant failed to deliver the initial privacy notice so that each customer could reasonably be expected to receive actual notice. Therefore Defendant violated the Privacy Rule, 16 C.F.R. § 313.9, and Regulation P, 12 C.F.R. § 1016.9.

32. On this news, shares of LendingClub fell $.49 per share, or over 15% from its previous closing price to close at $2.77 per share on April 25, 2018, damaging investors.

33. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of LendingClub during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

Class Action Complaint for Violation of the Federal Securities Laws

1    35.    The members of the Class are so numerous that joinder of all members is

2  impracticable. Throughout the Class Period, LendingClub securities were actively traded on the

3  NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be

4  ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or

5  thousands of members in the proposed Class. Record owners and other members of the Class may

6  be identified from records maintained by the Company or its transfer agent and may be notified of

7  the pendency of this action by mail, using the form of notice similar to that customarily used in

8  securities class actions.

9    36.    Plaintiff's claims are typical of the claims of the members of the Class as all

10  members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal

11  law that is complained of herein.

12    37.    Plaintiff will fairly and adequately protect the interests of the members of the Class

13  and has retained counsel competent and experienced in class and securities litigation. Plaintiff has

14  no interests antagonistic to or in conflict with those of the Class.

15    38.    Common questions of law and fact exist as to all members of the Class and

16  predominate over any questions solely affecting individual members of the Class. Among the

17  questions of law and fact common to the Class are:

18    •    whether the federal securities laws were violated by Defendants' acts as alleged

19      herein;

20    •    whether statements made by Defendants to the investing public during the Class

21      Period misrepresented material facts about the financial condition, business,

22      operations, and management of the Company;

23    •    whether Defendants' public statements to the investing public during the Class

24      Period omitted material facts necessary to make the statements made, in light of the

25      circumstances under which they were made, not misleading;

26    •    whether the Individual Defendants caused the Company to issue false and misleading

27      SEC filings and public statements during the Class Period;

28

Class Action Complaint for Violation of the Federal Securities Laws

1       •       whether Defendants acted knowingly or recklessly in issuing false and misleading

2               SEC filings and public statements during the Class Period;

3       •       whether the prices of LendingClub securities during the Class Period were artificially

4               inflated because of the Defendants' conduct complained of herein; and

5       •       whether the members of the Class have sustained damages and, if so, what is the

6               proper measure of damages.

7       39.     A class action is superior to all other available methods for the fair and efficient

8   adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

9   damages suffered by individual Class members may be relatively small, the expense and burden of

10  individual litigation make it impossible for members of the Class to individually redress the wrongs

11  done to them. There will be no difficulty in the management of this action as a class action.

12      40.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-

13  on-the-market doctrine in that:

14      •       Defendants made public misrepresentations or failed to disclose material facts during

15              the Class Period;

16      •       the omissions and misrepresentations were material;

17      •       LendingClub securities are traded in efficient markets;

18      •       the Company's securities were liquid and traded with moderate to heavy volume

19              during the Class Period;

20      •       the Company traded on the NYSE, and was covered by multiple analysts;

21      •       the misrepresentations and omissions alleged would tend to induce a reasonable

22              investor to misjudge the value of the Company's securities; and

23      •       Plaintiff and members of the Class purchased and/or sold LendingClub securities

24              between the time the Defendants failed to disclose or misrepresented material facts

25              and the time the true facts were disclosed, without knowledge of the omitted or

26              misrepresented facts.

27      41.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a

28  presumption of reliance upon the integrity of the market.

Class Action Complaint for Violation of the Federal Securities Laws

42.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of LendingClub securities during the Class Period.

47.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or

- 15 -

1 disseminated to the investing public; and knowingly and substantially participated, or acquiesced in

2 the issuance or dissemination of such statements or documents as primary violations of the

3 securities laws. These defendants by virtue of their receipt of information reflecting the true facts of

4 the Company, their control over, and/or receipt and/or modification of the Company's allegedly

5 materially misleading statements, and/or their associations with the Company which made them

6 privy to confidential proprietary information concerning the Company, participated in the

7 fraudulent scheme alleged herein.

8        48.      Individual Defendants, who are the senior officers and/or directors of the Company,

9 had actual knowledge of the material omissions and/or the falsity of the material statements set forth

10 above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative,

11 acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in

12 the statements made by them or other personnel of the Company to members of the investing

13 public, including Plaintiff and the Class.

14        49.      As a result of the foregoing, the market price of LendingClub securities was

15 artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the

16 Individual Defendants' statements, Plaintiff and the other members of the Class relied on the

17 statements described above and/or the integrity of the market price of LendingClub securities during

18 the Class Period in purchasing LendingClub securities at prices that were artificially inflated as a

19 result of the Company's and the Individual Defendants' false and misleading statements.

20        50.      Had Plaintiff and the other members of the Class been aware that the market price of

21 LendingClub securities had been artificially and falsely inflated by the Company's and the

22 Individual Defendants' misleading statements and by the material adverse information which the

23 Company's and the Individual Defendants did not disclose, they would not have purchased

24 LendingClub securities at the artificially inflated prices that they did, or at all.

25        51.      As a result of the wrongful conduct alleged herein, Plaintiff and other members of

26 the Class have suffered damages in an amount to be established at trial.

27        52.      By reason of the foregoing, the Company and the Individual Defendants have

28 violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the

Class Action Complaint for Violation of the Federal Securities Laws

Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of LendingClub securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

53.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

55.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

56.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of LendingClub securities.

57.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed

Class Action Complaint for Violation of the Federal Securities Laws

1  the power to control the specific activities which comprise the primary violations about which

2  Plaintiff and the other members of the Class complain.

3       58.       By reason of the above conduct, the Individual Defendants are liable pursuant to

4  Section 20(a) of the Exchange Act for the violations committed by the Company.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.       Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.       Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.       Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.       Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: May 2, 2018                          Respectfully submitted,

                                            **THE ROSEN LAW FIRM, P.A.**

                                            By: /s/ Laurence M. Rosen
                                            Laurence M. Rosen, Esq. (SBN 219683)
                                            355 S. Grand Avenue, Suite 2450
                                            Los Angeles, CA 90071
                                            Telephone: (213) 785-2610
                                            Facsimile: (213) 226-4684
                                            Email: lrosen@rosenlegal.com

                                            Counsel for Plaintiff

Class Action Complaint for Violation of the Federal Securities Laws