**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MATTHEW VEAL, ET AL.,<br>Plaintiffs,<br>v.<br>LENDINGCLUB CORPORATION, et al.,<br>Defendants. | Case No. 18-cv-02599-BLF<br><br>**ORDER GRANTING LENDINGCLUB INVESTOR GROUP'S MOTION TO APPOINT LEAD PLAINTIFF AND LEAD COUNSEL; DENYING RAVI MALLUR'S MOTION TO APPOINT; VACATING NOVEMBER 15, 2018 HEARING**<br><br>[Re: ECF 17, 21] |

Before the Court are two motions to appoint lead plaintiff and lead counsel in this putative class action claiming various securities-laws violations: Ravi Mallur's motion (ECF 17) and XiangHong Ding and Zhenbin Chen's (collectively, "LendingClub Investor Group") motion (ECF 21). The Court finds this matter suitable for submission without oral argument and hereby VACATES the hearing scheduled for November 15, 2018. However, the case management conference set for that same day remains on calendar. For the reasons stated herein, the Court GRANTS LendingClub Investor Group's motion and DENIES Mallur's motion.

## I. BACKGROUND

On May 2, 2018, Plaintiff Matthew Veal filed this putative securities class action lawsuit against Defendants LendingClub Corporation ("LendingClub"), Renaud Laplanche, Scott Sanborn, Carrie L. Dolan, Bradley Coleman, and Thomas W. Casey (collectively, "Defendants"). Compl., ECF 1. Veal alleges that, from February 28, 2015 to April 25, 2018 ("Class Period"), Defendants issued materially false and misleading statements and concealed material adverse facts regarding LendingClub's business, operational, and financial results. *Id.* ¶¶ 1, 18–29. Veal alleges that, as a result of these misrepresentations and omissions, "the market price of LendingClub securities was artificially inflated during the Class Period." *Id.* ¶ 49. Veal alleges

that, after the misrepresentations and omissions became apparent, "shares of LendingClub fell $.49 per share, or over 15% from its previous closing price to close at $2.77 per share on April 25, 2018, damaging investors." *Id.* ¶ 32. As a result, Veal filed the instant lawsuit for violations of the Securities Exchange Act of 1934 on behalf of all those who purchased or otherwise acquired the publicly traded securities of LendingClub during the Class Period. *Id.* ¶ 34.

On May 3, 2018, the Rosen Law Firm, P.A. issued a Private Securities Litigation Reform Act ("PSLRA") notice advising potential Class members of the claims alleged in the action and the 60-day deadline for class members to move to be appointed as lead plaintiff under 15 U.S.C. § 78u-4(a)(3)(A)(i). *See* Rosen Decl., Ex. 1 ("Notice"), ECF 18-1. On July 2, 2018, Ravi Mallur filed a motion seeking appointment as lead plaintiff and approval of the Rosen Law Firm, P.A. as lead counsel for the class. *See* Mallur Mot., ECF 17. On that same day, XiangHong Ding and Zhenbin Chen moved collectively as the LendingClub Investor Group seeking appointment as lead plaintiff and approval of Pomerantz LLP as lead counsel. *See* LC Mot., ECF 21.[1] Each movant opposed appointment of the other. *See* Mallur Opp., ECF 29; LC Opp., ECF 32. However, LendingClub Investor Group included with its opposition a joint declaration from its individual members which cured the deficiencies Mallur had identified in his opposition. *See* Joint Decl., ECF 32-1. As such, in reply, Mallur conceded that he should only be appointed "[i]n the event the Court does not appoint the LendingClub Investor Group." Mallur Reply, ECF 39. On November 6, 2018, Mallur submitted a notice of nonopposition to Lending Club Investor Group's lead plaintiff motion. *See* ECF 55.

## II. LEGAL STANDARD

### A. Lead Plaintiff

The Private Securities Litigation Reform Act of 1995 ("PSLRA") governs the procedure for selection of lead plaintiff in all private class actions under the Securities Exchange Act of 1934. 15 U.S.C. § 78u-4(a)(3). Pursuant to the PSLRA, the court shall appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most

---

[1] Marsha Tiller also filed a motion to appoint lead plaintiff and lead counsel (ECF 25), which she later withdrew (ECF 53).

2

capable of adequately representing the interests of class members," also referred to as the "most adequate plaintiff." *Id*. at § 78u-4(a)(3)(B)(i).

The PSLRA "provides a simple three-step process for identifying the lead plaintiff." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). First, the pendency of the action, the claims made, and the purported class period must be publicized in a "widely circulated national business-oriented publication or wire service." *Id.*; *see also* 15 U.S.C. § 78u-4(a)(3)(A)(i). This notice must be published within 20 days of the filing of the complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i). It must also alert members of the purported class that they have 60 days to move for appointment as lead plaintiff. *Id.* § 78u-4(a)(3)(A)(i)(II).

Second, the court must identify the presumptive lead plaintiff, which can be "a member or members of the purported plaintiff class." 15 U.S.C. § 78u-4(a)(3)(B)(i). To do so, the court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 730. The court must then determine whether that plaintiff, "based on the information he has provided in his pleadings and declarations," satisfies the requirements of Rule 23(a), "in particular those of 'typicality' and 'adequacy.'" *Id*. If the plaintiff with the largest financial interest satisfies these requirements, he becomes the "presumptively most adequate plaintiff." *Id.*; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Finally, the other plaintiffs must have "an opportunity to rebut the presumptive lead plaintiff's showing that [he] satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730. Unless a member of the purported plaintiff class provides proof that the presumptive plaintiff "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class," the court must appoint the presumptively most adequate plaintiff as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Cavanaugh*, 306 F.3d at 732.

**B. Lead Counsel**

Under the PLSRA, the lead plaintiff has the right, subject to court approval, to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently."

3

*Cohen v. U.S. Dist. Court*, 586 F.3d 703, 711 (9th Cir. 2009) (citation omitted). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Id.* at 712 (citations omitted).

## III. ANALYSIS

Because Mallur concedes LendingClub Investor Group ("LIG") should be lead plaintiff if the Court finds it satisfies the statutory requirements, the Court analyzes whether LIG satisfies these requirements. As discussed below, the Court finds that it does.

### A. Procedural Requirements

Pursuant to the PSLRA, the Rosen Law Firm published a notice of the pending action on May 3, 2018. *See* Notice. The notice announced the pendency of this action, described the claims, specified the class period, and advised putative class members that they had 60 days from the date of the notice to file a motion to seek appointment as lead plaintiff in the lawsuit. *Id.* Thus, the notice complied with the PSLRA's requirements. *See* 15 U.S.C. § 78u-4(a)(3)(A).

As noted above, LIG then filed this motion on July 2, 2018 the last day within the 60-day deadline. LIG has therefore met the statutory notice requirements.

### B. Financial Interest

The Court must next determine whether LIG qualifies as the most adequate plaintiff. To make this determination, the Court first considers LIG's financial interest in the relief sought. *See Cavanaugh*, 306 F.3d at 730.

As an initial matter, the PSLRA contemplates that a "group of persons" may serve as the most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(iii). *See, e.g.*, *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups . . . ."); *In re Versata, Inc.*, Nos. C 01-1439 SI *et al.*, 2001 WL 34012374, at *6 (N.D. Cal. Aug. 20, 2001) ("[U]nder appropriate circumstances, small groups, whether or not they have any pre-litigation relationship, can aggregate their financial losses.").

In appointing a group as lead plaintiff, courts must be wary of lawyers' attempts to group unrelated plaintiffs to ensure the lawyers get appointed as lead counsel. *See Bodri v. Gopro, Inc.*, No. 16-CV-00232-JST, 2016 WL 1718217, at *4 (N.D. Cal. Apr. 28, 2016) ("Northern District of

California courts have generally found that appointing a group of unrelated investors undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation. (internal quotation marks and citation omitted)). To avoid this potential pitfall, district courts analyze the following criteria to make sure the group would sufficiently adequately represent the class: "descriptions of [the group's] members, including any pre-existing relationship among them, an explanation of how its members would function collectively, and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation." *In re Versata*, 2001 WL 34012374, at *5 (alteration in original) (quoting *In re Network Associates, Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999)).

After analyzing these criteria, the Court finds LIG to be a group that can serve as most adequate plaintiff. XiangHong Ding and Zhenbin Chen each invested in and incurred significant losses during the Class Period due to purchases of LendingClub Securities. *See* Pafiti Decl., Ex. C ("Loss Chart"), ECF 22-3. The movants have an established pre-existing relationship, as they were previously married to one another and are co-parenting their son together. Joint Decl. ¶ 4, ECF 32-1. As such, they regularly see and communicate with one another outside of this litigation. *Id.* They've discussed seeking joint appointment as lead plaintiffs and participated in a conference call about the litigation. *See id.* ¶ 8. They have also established a mechanism for settling disagreements, whereby Mr. Chen's decisions shall govern in the face of an intractable disagreement, with input from Ms. Ding. *Id.* ¶ 7. Given these characteristics, the Court finds the group can be the most adequate plaintiff and thus asks about the aggregate financial interest of the group.

LIG has submitted a sworn Loss Chart establishing that they collectively purchased 111,450 shares, retained 62,750 shares, expended net funds of $783,553, and lost a net total of $398,723. *See* Loss Chart. The only other movant Mallur concedes that LIG has the largest collective loss (Mallur Reply at 1). As such, LIG satisfies this requirement. *Cf. City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,* No. 12-CV-06039-LHK, 2013 WL 2368059, at *3 (N.D. Cal. May 29, 2013) (quoting *Bassin v. Decode Genetics, Inc.,* 230 F.R.D. 313, 316 (S.D.N.Y.2005)) ("Without access to financial information from other parties, the Court

is constrained to conclude that the [proposed plaintiff's] alleged loss best qualifies it to serve as lead plaintiff.").

### C. Rule 23 Requirements

Having determined that LIG is the prospective lead plaintiff with the greatest financial stake in this litigation, the Court must next consider whether LIG satisfies the typicality and adequacy requirements of Rule 23(a).[2] "When the court makes [this] initial determination, it must rely on the . . . complaint and sworn certification; there is no adversary process to test the substance of those claims." *Cavanaugh*, 306 F.3d at 730. As such, LIG need only make a *prima facie* showing that it satisfies the Rule 23 requirements of typicality and adequacy. *See id.* at 731.

In determining whether typicality is satisfied, a Court inquires "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). In this case, like all other members of the purported class, LIG purchased LendingClub stocks during the Class Period, when LendingClub stock prices were allegedly artificially inflated by Defendants' misrepresentations and/or omissions, and LIG allegedly suffered damages when those misrepresentations and/or omissions came to light, *see* Loss Chart. LIG's claims thus appear to be typical, if not identical, to the claims of other members of the putative class.

The test for adequacy asks whether the lead plaintiff and its counsel "have any conflicts of interest with other class members" and whether the lead plaintiff and its counsel will "prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Here, there is no indication of conflicts between LIG and other class members and LIG's diligence in seeking appointment as lead plaintiff suggests that it and its counsel will prosecute this action vigorously. *See generally* Joint Decl. Thus, LIG has made a *prima facie* showing of

---

[2] Federal Rule of Civil Procedure 23(a) sets forth four requirements for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. Fed. R. Civ. P. 23(a). At the appointment of lead plaintiff stage, courts need only consider typicality and adequacy, as the failure to satisfy numerosity or commonality would preclude certifying a class action at all. *Cavanaugh*, 306 F.3d at 730 n.5.

1 typicality and adequacy, as required at this stage, and the Court finds that LIG qualifies as the
2 presumptively most adequate plaintiff under the PSLRA.

### D. Opportunity to Rebut

Mallur's only challenge to LIG as the most adequate plaintiff is to LIG's status as a group, which it has now rescinded, and the Court has addressed above. Marsha Tiller, who withdrew her motion to be lead plaintiff, also challenged LIG on the same basis. *See* Tiller Opp. at 3–5, ECF 30. No other member of the purported plaintiff class has provided proof that LIG "will not fairly and adequately protect the interests of the class" or that it "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, the Court APPOINTS LIG to serve as lead plaintiff.

### E. Lead Counsel

No parties have objected to LIG's selection of Pomerantz LLP as counsel. The Court has reviewed the firm's resume, Pafiti Decl. Exh. D, ECF 22-4, and is satisfied that LIG has made a reasonable choice of counsel. Accordingly, the Court APPROVES LIG's selection of Pomerantz LLP as lead counsel.

## IV. ORDER

LIG's motion to appoint lead plaintiff and lead counsel is GRANTED, and Mallur's motion is DENIED. LendingClub Investor Group will serve as lead plaintiff in this case, and Pomerantz LLP are appointed as lead counsel.

**IT IS SO ORDERED.**

Dated: November 7, 2018

*/s/ Beth Labson Freeman*
BETH LABSON FREEMAN
United States District Judge